# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs October 29, 2014

## DORIS WILLIAMS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2010-B-1227    Cheryl A. Blackburn, Judge**

---

**No. M2014-00033-CCA-R3-PC - Filed November 5, 2014**

---

Petitioner, Doris Williams, pleaded guilty to second degree murder and received an out-of-range sentence of thirty-five years to be served at 100%. In her post-conviction petition, she claimed that she received ineffective assistance of counsel and that her guilty plea was not knowing and voluntary. The post-conviction court denied relief. On appeal, petitioner argues that she was heavily medicated during trial counsel's representation of her and during her plea hearing, that trial counsel did not advise her in a manner she could comprehend due to said medication, and that she entered her guilty plea without a full understanding of the consequences. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT H. MONTGOMERY, JR., JJ., joined.

Leah Wilson, Nashville, Tennessee, for the appellant, Doris Williams.

Herbert H. Slatery III, Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Victor S. Johnson III, District Attorney General; and Bret Thomas Gunn, Assistant District Attorney, for the appellee, State of Tennessee.

## OPINION

### I. Facts

Petitioner and two co-defendants were indicted for first degree premeditated murder in May 2010. Sometime thereafter, petitioner was evaluated for competency. As a result of her evaluation, she was committed for a time to the Middle Tennessee Mental Health Institute ("MTMHI"). In May 2011, petitioner pleaded guilty to second degree murder. She

agreed to an out-of-range sentence of thirty-five years in exchange for the State allowing her to plead to a lesser-included offense. At her plea acceptance hearing, the State offered the following factual basis for her plea:

> If it had gone to trial, the State's proof would be that on October the 14th of 2009[,] [petitioner] was living with a Mr. David Hurst, a boyfriend-girlfriend situation, at a trailer . . . in Davidson County. In the early morning hours[,] two people that the police later learned were LeSergio Wilson and Alicia Williams came into the trailer and shot and killed Mr. Hurst. [Petitioner] went to the neighbors. When the police arrived, [petitioner] gave an account of the incident. The police quickly found problems with the account that she was giving. They had a cell phone that they recovered from the trailer, and there was a phone call missing from that cell phone when . . . compared . . . to the phone records. And that call was to the phone of Alicia Williams. Shortly after that, the police stated looking at LeSergio Wilson and Alicia Williams as possibly being involved with this. They learned that [petitioner] knew that Mr. Hurst had . . . an affair with [petitioner's] grown daughter. She was aware of that. At some point later[,] Mr. LeSergio Wilson was arrested with a firearm in his possession. It came back to be the murder weapon in that case. The police discovered that even after this incident[,] [petitioner] had been [making] phone calls back and forth between her and Alicia Williams and that [petitioner] had been taking items to the pawnshop and pawning them around the time of those phone calls.
>
> Ultimately[,] the police got a wiretap in this case, and there's one critical phone call between [petitioner] and Alicia Williams where they are discussing the weapon that was found on Mr. LeSergio Wilson[, and] [petitioner] was quite upset at LeSergio Wilson for keeping that weapon that was a murder weapon in that case.
>
> Ultimately[,] the police interviewed [petitioner] where she admitted a great deal of what she had said. In fact, LeSergio Wilson admitted he had been hired by [petitioner] to kill Mr. Hurst. And one of [petitioner's] friends said that prior to this [petitioner] had been looking for somebody to kill Mr. Hurst. And either they received proceed[s] that were there at the trailer or from these pawns that [petitioner] did, Mr. Wilson and Alicia Williams.

During the plea colloquy between the trial court and petitioner, petitioner affirmed that trial counsel had read the plea agreement to her, that she initialed each section, and that he had answered her questions about the plea agreement to her satisfaction. Petitioner told the

court that at the time of the hearing, she was taking Celexa, Trazadone, and Seroquel, as well as other medications that she could not remember. Petitioner affirmed that she had been residing at MTMHI but that she had been returned to the sheriff's custody a "couple of months" prior to the hearing. Petitioner told the court that she had taken her medications the morning of the hearing but that she was not having difficulty understanding the proceedings. The court asked, "I just want to make sure because of all the medication you take and other issues[,] do you thoroughly understand what you're doing today[?]" Petitioner responded, "Yes, ma'am." She also told the court that she was satisfied with her attorney.

On April 12, 2012, petitioner filed a pro se petition for post-conviction relief. The post-conviction court found that she had presented a colorable claim and appointed counsel to represent her. An amended petition was subsequently filed, and the post-conviction court held an evidentiary hearing on April 22, 2013.

Petitioner and trial counsel testified at the evidentiary hearing. Petitioner testified that she had been heavily medicated during the time she was incarcerated pending trial and that trial counsel did not give her enough time to make a decision about the State's plea offer. Prior to her guilty plea, petitioner was treated for "post[-]traumatic antidepression and bipolar disorder." She took Seroquel and Trazodone, which made her "[v]ery groggy." Petitioner testified that she was not "well enough" to make the decision that she did and that she did not understand what trial counsel told her. Petitioner explained that trial counsel met with her three times over thirteen months and that when he presented the State's plea offer to her, he told her that she had until the following day to decide whether to accept. Petitioner said that of the three times that trial counsel visited, two times were at her request and the third was on trial counsel's initiative. In addition, trial counsel's investigator met with her four or five times. Petitioner said that she would have gone to trial if she had understood what she was doing when entering the plea.

On cross-examination, petitioner said that she could not remember the plea acceptance hearing well, but she insisted that she was not having difficulty "remembering when an offer was first made to her [or] how many times [she] met with [trial counsel]." Petitioner testified that she told trial counsel that she was heavily medicated. She said that she made a mistake when she told the trial court during the plea acceptance hearing that she was satisfied with trial counsel.

Trial counsel testified that he had been practicing law in Tennessee since 1999. Trial counsel agreed that he obtained an order to have petitioner evaluated because "based on [his] observations[,] [he] felt like she either needed medication or was on too much medication." He explained that she "was sometimes unresponsive or slow to respond." The evaluation determined that petitioner was competent but MTMHI requested that she remain there to

monitor her medications. Trial counsel recalled that petitioner was more responsive after her stay at MTMHI. He explained that prior to going to MTMHI, petitioner moved slowly and would not interact with him; after, she walked faster, she would look him in the eye, and she would converse with him. He said that he would ask her questions and "hav[e] her explain things back" to him to ensure that she understood what he told her. Trial counsel stated, "[I]t was my assessment that she fully understood." He testified that he reviewed the evidence against petitioner with her, including various recordings of telephone conversations.

Trial counsel said that the State's initial plea offer was for forty years, which "had been outstanding for quite awhile," and he recalled that the offer of thirty-five years was given "at least a week or two before she pled guilty." Trial counsel said that he discussed both offers with petitioner and "d[id] the math with her" regarding her life expectancy and "whether she would live to get out of prison." He stated that the offer gave her a chance to one day be out of prison versus the sentence she could expect if she were found guilty of first degree murder at trial. Trial counsel testified, "If I had suspected in any way she didn't understand, I would not have let her go through with the plea." On cross-examination, he said that he met with petitioner to review the plea petition and told her that he would be back to discuss it and that she should think about the offer.

The post-conviction court took the matter under advisement and subsequently entered a written order denying relief. In the order, the post-conviction court explicitly credited trial counsel's testimony and found that he did not provide ineffective assistance. Further, the post-conviction court stated that petitioner's plea acceptance hearing transcript belied her post-conviction claims because at the hearing, petitioner affirmed that she was not having difficulty understanding the proceedings and was satisfied with trial counsel. The post-conviction court found that petitioner was aware of the consequence of her guilty plea and that she entered it knowingly and voluntarily.

## II. Analysis

On appeal, petitioner claims that trial counsel did not adequately communicate with her and that her guilty plea was not entered into knowingly and voluntarily, both situations arising from her being heavily medicated before and during her plea acceptance hearing.

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). "'Evidence is clear and convincing when there is no serious or substantial doubt about the

correctness of the conclusions drawn from the evidence.'" *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

Appellate courts do not reassess the post-conviction court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the post-conviction judge as the trier of fact. *R.D.S.*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The post-conviction court's findings of fact are conclusive on appeal unless the preponderance of the evidence is otherwise. *Berry v. State*, 366 S.W.3d 160, 169 (Tenn. Crim. App. 2011) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App.1997)). However, conclusions of law receive no presumption of correctness on appeal. *Id.* (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)). As a mixed question of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is de novo with no presumption of correctness. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (citations omitted).

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution require that a criminal defendant receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. Crim. App. 2004) (citing *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975)). When a petitioner claims that he received ineffective assistance of counsel, he must demonstrate both that his lawyer's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007) (citation omitted). It follows that if this court holds that either prong is not met, we are not compelled to consider the other prong. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004).

To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006)). As our supreme court held:

> "[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations."

*Id.* at 315-16 (quoting *Baxter*, 523 S.W.2d at 934-35). On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689).

To satisfy the prejudice prong of *Strickland* in the context of a guilty plea, a petitioner must demonstrate that "but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." *Hicks v. State*, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998). Moreover, a guilty plea must be entered knowingly, voluntarily, and intelligently. *Lane*, 316 S.W.3d at 562; *see North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969). If a plea is not knowingly, voluntarily, and intelligently entered, the guilty plea is void because appellant has been denied due process. *Lane*, 316 S.W.3d at 562 (citing *Boykin*, 395 U.S. at 243 n.5). To make such a determination, the court must examine "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Id*. Courts should consider the following factors when ascertaining the validity of a guilty plea:

> (1) the defendant's relative intelligence; (2) the defendant's familiarity with criminal proceedings; (3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.

*Id.* (quoting *Howell v. State*, 185 S.W.3d 319, 330-31 (Tenn. 2006)). "[A] plea is not voluntary if it results from '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" *Id.* at 563 (quoting *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993)). Thus, the transcript of the plea colloquy must affirmatively show that a defendant's decision to plead guilty was both voluntary and knowledgeable. *Id.* The trial court must ensure that the defendant entered a knowing and intelligent plea by thoroughly "'canvass[ing] the matter with the accused to make sure that he has a full understanding of what the plea connotes and of its consequences.'" *Id*. (quoting *Blankenship*, 858 S.W.2d at 904).

In this case, petitioner's basis for asserting that she received ineffective assistance of counsel and that she did not enter her guilty plea knowingly and voluntarily is that she had been so heavily medicated that she was not able to comprehend her counsel's advice and the plea proceedings. It is clear from the guilty plea hearing transcript and the testimony presented at the post-conviction hearing that both trial counsel and the trial court were

concerned about petitioner's mental state. Trial counsel testified that he obtained an order for a mental evaluation because he observed that petitioner was slow and unresponsive when he met with her; however, he further testified that after a stay at MTMHI, petitioner was able to engage with him. He said that he would not have allowed her to enter the guilty plea if he felt that she did not understand what she was doing. Trial counsel identified the issue and acted appropriately in response, only proceeding with the case when he believed that petitioner was understanding. Thus, we conclude that trial counsel did not provide ineffective assistance.

Moreover, the trial court closely examined petitioner regarding her medications and her understanding of the proceedings during the guilty plea hearing. Petitioner told the trial court that she understood and that she was satisfied with trial counsel. She was able to answer the court's questions throughout the hearing.

"A petitioner's testimony at a guilty plea hearing 'constitute[s] a formidable barrier' in any subsequent collateral proceeding because '[s]olemn declarations in open court carry a strong presumption of verity.'" *Bruce S. Rishton v. State*, No. E2010-02050-CCA-R3-PC, 2012 WL 1825704, at *17 (Tenn. Crim. App. May 21, 2012) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). In this case, the post-conviction court credited petitioner's testimony during the guilty plea hearing over her testimony at the post-conviction hearing. In sum,

> [t]he evidence does not preponderate against the findings of the post-conviction court. It appears the petitioner is suffering from a classic case of "Buyer's Remorse," in that [s]he is no longer satisfied with the plea for which [s]he bargained. A plea, once knowingly and voluntarily entered, is not subject to obliteration under such circumstances.

*Robert L. Freeman v. State*, No. M2000-00904-CCA-R3-PC, 2002 WL 970439, at *2 (Tenn. Crim. App. May 10, 2002). Petitioner is not entitled to relief.

## CONCLUSION

Based on the parties' briefs, the record, and the applicable law, we affirm the judgment of the post-conviction court.

_____
ROGER A. PAGE, JUDGE